1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Aparna VASHISHT-ROTA,

Plaintiff,

v.

UTAH ATTORNEY GENERAL, et al.,

Defendants.

Case No.:  22-cv-0978-AGS-KSC

**ORDER ON MOTION TO DISMISS (ECF 11) AND MOTION TO AMEND (ECF 31)**

Plaintiff sued a Utah state judge and the Utah Attorney General, alleging that they violated her rights in the handling of her Utah state cases. She also seeks to amend her complaint to add new Utah judges and the State of Utah. The defense moves to dismiss this case on a variety of grounds.

## BACKGROUND

Plaintiff Dr. Aparna Vashisht-Rota has been involved in extensive litigation in both Utah state court and California federal court regarding a previous business relationship she and her business had with Howell Management Services. The claims for the current federal lawsuit stem from two Utah state-court proceedings "over which Judge [Angela F.] Fonnesbeck presided." (ECF 1, at 2.) In the first case, Judge Fonnesbeck entered a default judgment against Vashisht-Rota. (*Id.* at 3.) In the second, Judge Fonnesbeck "dismissed with prejudice"[1] and declared Vashisht-Rota a "vexatious" litigant under Utah Rules of Civil Procedure. (*Id.*) The second case, including the "vexatious" litigant determination, was appealed and affirmed. *See Vashisht-Rota v. Howell Mgmt. Servs.*, 503 P.3d 526, 528

---

[1] Although Vashisht-Rota believes that Judge Fonnesbeck dismissed the second suit with prejudice, the Utah Court of Appeals suggests that Vashisht-Rota voluntarily withdrew her complaint before the trial judge's ruling. *See Vashisht-Rota v. Howell Mgmt. Servs.*, 503 P.3d 526, 529 (Utah Ct. App. 2021) (noting her voluntary dismissal on "August 5, 2020," predated the trial court's "September 2, 2020" dismissal order).

1

(Utah Ct. App. 2021), *cert. denied sub nom. Vashisht-Rota v. Howell Mgt.*, 509 P.3d 196 (Utah 2022), *and cert. denied*, 143 S. Ct. 487 (2022), *reh'g denied*, 143 S. Ct. 849 (2023).

Vashisht-Rota now sues Judge Fonnesbeck, in her individual capacity, and the Utah Attorney General, in both his individual and official capacities. Vashisht-Rota claims that the Utah Attorney General failed to respond to her when she wrote to him complaining about "poor services, delays, and faulty orders." (ECF 1, at 1.) Her allegations against Judge Fonnesbeck are more numerous. (*See* ECF 1, *passim.*) They include:

- "faulty rulings,"
- "delayed rulings,"
- "threat of legal force,"
- "unwarranted sanctions,"
- "refusal to accept established precedent,"
- "misuse of discretion,"
- attempting to "coerce a settlement,"
- "discriminating" against plaintiff in her rulings,
- issuing a "gag" order,
- "perpetrat[ing] white supremacy by being unprofessional,"
- "fail[ing] to provide a fair trial,"
- "refus[ing] to allow leave to amend freely," and
- "using [plaintiff's] race to enslave her" by failing to order payment of claimed wages.

(ECF 1, at 2, 3, 8, 11, 14.) Vashisht-Rota asserts that these actions violated constitutional, statutory, and common-law rights under United States, California, and Utah law. (ECF 1, *passim.*) She seeks billions of dollars[2] in monetary damages and asks the Court to: (1) transfer her cases "to California" and reopen them, (2) require the Utah Attorney General "to search all phones and messages from Judge Fonnesbeck to all related parties in that Utah lawsuit," (3) "immediately restore Plaintiff's statute of limitations to her claims," (4) "set up 100X the damages awarded herein to prevent future denial of fast and

---

[2] Vashisht-Rota computes her wage loss at "$2,102,400,000." (*See* ECF 34-1, at 2.)

prompt service to minorities," and (5) mandate "bias training" for all Utah judges. (ECF 1, at 17.)

### DISCUSSION

Defendants move to dismiss the complaint in its entirety. Defendants argue, among other things, that judicial immunity insulates Judge Fonnesbeck, the *Rooker-Feldman* doctrine bars all claims, and this Court lacks personal jurisdiction over both defendants.

**A.    Judicial Immunity**

"[A] judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). Accordingly, judges may not be sued in civil actions for their judicial acts, "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Id.* Litigants who believe the judicial process has wrongfully harmed them may pursue relief through the appellate process; they are not entitled to sue judges for alleged mistakes in their decision making.

There are only two instances in which a judge will be deprived of this immunity. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (internal citations omitted).

Vashisht-Rota argues that judicial immunity does not apply both because the actions were nonjudicial and because they exceeded Judge Fonnesbeck's jurisdiction. She believes that Judge Fonnesbeck's actions were "[e]rroneous[ly] issued without jurisdiction," rendering them "nonjudicial." (ECF 22, at 17.) She also contends that Judge Fonnesbeck "acted in excess of her jurisdiction" because the "matter was governed by AAA [American Arbitration Association] rules." (*Id.*) Vashisht-Rota also suggests that the underlying cases should have been decided in California, not Utah.

First, the Court considers whether Judge Fonnesbeck's actions were judicial or nonjudicial. In this determination, the court looks to "the nature of the act itself, *i.e.*,

whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12. Vashisht-Rota's complaint is based on Judge Fonnesbeck's actions and decisions throughout the course of the Utah trials, including granting default judgment, ordering mediation, and granting the other party relief. (ECF 1, at 3–8.) These are "function[s] normally performed by a judge." *See Mireles,* 502 U.S. at 12*.* Further, all allegations relate directly to the cases over which Judge Fonnesbeck presided, so Vashisht-Rota was certainly dealing "with the judge in [her] judicial capacity." *See id.* Thus, it seems that Judge Fonnesbeck acted in her judicial capacity.

Vashisht-Rota contends, though, that Judge Fonnesbeck was improperly "acting on behalf of the government" and repeatedly violating Vashisht-Rota's rights with her rulings (*see, e.g.*, ECF 22, at 13–14)—none of which are functions normally performed by a judge. But a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." *Forrester v. White*, 484 U.S. 219, 227 (1988). Nor is a judge "deprived of immunity" if her actions were "in error" or were "in excess of [her] authority." *Mireles*, 502 U.S. at 13. So even if Vashisht-Rota's malice allegation proved true, it would not alter the analysis. Judge Fonnesbeck's actions were judicial.

Second, the Court must assess whether Judge Fonnesbeck acted in the complete absence of jurisdiction. For judicial-immunity purposes, "the scope of the judge's jurisdiction must be construed broadly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Under Utah's Constitution, the state district courts are courts of general jurisdiction. Utah Const. art. VIII, §1. Thus, "[e]xcept as otherwise provided by the Utah Constitution or by statute, the district court has original jurisdiction in all matters civil and criminal." Utah Code § 78A-5-102(1). So, Judge Fonnesbeck had jurisdiction to hear these cases.

Vashisht-Rota disagrees, pointing to the arbitration agreements and arguing that the cases should have been heard in California. But the allegedly applicable arbitration agreements do not alter a court's jurisdiction. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (explaining that the Federal Arbitration Act placed "arbitration

4

agreements on equal footing with all other contracts," but "[a]s for jurisdiction over controversies touching arbitration, the Act does nothing"). And even if the underlying cases should have applied California law, as Vashisht-Rota asserts, state courts routinely consider conflict-of-laws questions and have jurisdiction to apply out-of-state law. *See* 28 U.S.C. § 1738 (requiring that each state's laws "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken"); Restatement (Second) of Conflict of Laws § 2 cmt. 3 (1971) ("Each state has its own methods and rules for determining whether particular issues in a suit involving foreign elements should be determined by its own local law rules or by those of another state."). So neither the existence of an arbitration agreement nor the possible implication of California law affected Judge Fonnesbeck's jurisdiction to hear the dispute.

All claims against Judge Fonnesbeck are barred by judicial immunity.

## B.   The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars lower federal courts from exercising jurisdiction over a direct appeal from a state-court decision, as well as "over the de facto equivalent of such an appeal." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (cleaned up); *see generally Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In short, *Rooker-Feldman* "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004).

What's more, *Rooker-Feldman* bars lower federal courts from entertaining "federal constitutional claims" that are "'inextricably intertwined' with the state court's judgment." *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001) (citing *Feldman*, 460 U.S. at 482 n.16). Claims are "inextricably intertwined" if "the district court must hold that the state court was wrong in order to find in favor of the plaintiff." *Id.* at 1030.

Vashisht-Rota's complaint seems to function as a forbidden de facto appeal. First, Vashisht-Rota's alleged legal wrongs consist entirely of decisions made during the Utah cases and of failures to correct those internally. In other words, she complains of the state court's judgment and issues inextricably intertwined with it. Second, she seeks damages arising from these state-court proceedings, as well as the reopening and transfer of those cases to California. (*See* ECF 1, at 17.) So, she "seeks relief from the judgment" of a state court. *See Cooper*, 704 F.3d at 778. *Rooker-Feldman* bars all such claims.

To avoid *Rooker-Feldman*'s fatal sweep, Vashisht-Rota raises two arguments. First, she protests that the doctrine does not apply when the state case is on appeal. Not so. *See Eicherly v. O'Leary*, 721 F. App'x 625, 627 (9th Cir. 2018) (holding that plaintiffs "may not avoid *Rooker-Feldman*'s bar" simply "because at least one of their cases remains pending on appeal"). At any rate, the point may be moot. It appears that neither of her state cases are currently pending appeal. *See Aug. Educ. v. Howell Mgmt.*, 525 P.3d 1266 (Utah 2023) (denying state certiorari, with no evidence of a U.S. Supreme Court certiorari petition); *Vashisht-Rota v. Howell Mgmt. Servs.*, 143 S. Ct. 487 (2022) (denying certiorari), *reh'g denied*, 143 S. Ct. 849 (2023).

Second, Vashisht-Rota insists that *Rooker-Feldman* is inapplicable due to arbitration agreements between her business and the defendant company. But the Court has found no authority—and Vashisht-Rota offers none—suggesting that arbitration agreements are relevant to the *Rooker-Feldman* analysis. To the contrary, many courts have deployed *Rooker-Feldman* to prevent the losing party from challenging state-court rulings concerning arbitration. *See, e.g.*, *Arnold v. Melwani*, 680 F. App'x 600, 603 (9th Cir. 2017) (applying *Rooker-Feldman* to a determination of whether to enforce an arbitration award).

Thus, the *Rooker-Feldman* doctrine deprives this Court of subject-matter jurisdiction over this dispute.

## C. Personal Jurisdiction

Finally, defendants argue that this Court lacks personal jurisdiction over them. Because the preceding issues are sufficient to dispose of this case, the Court will not

6

belabor this last issue. But defendants are correct. Vashisht-Rota has not carried her "burden of demonstrating that [personal] jurisdiction is appropriate." *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also* Cal. Code Civ. Proc. § 410.10 (California's long-arm statute, coextensive with the constitutional requirements of due process). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). As relevant here, Vashisht-Rota has the burden of demonstrating specific personal jurisdiction over the defendants, by satisfying this three-prong test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e.[,] it must be reasonable.

*Id*. at 802.

There is no evidence that any claim here arose from activities directed towards California by the defendants. The claims against Judge Fonnesbeck ensued from two cases assigned to her and filed in Utah, one by a Utah company and another by Vashisht-Rota and her company. Similarly, the Utah Attorney General was implicated in Vashisht-Rota's claims only after she wrote him a letter that he purportedly ignored. None of that suggests either of them purposefully availed themselves of California's forums, residents, or laws.

Vashisht-Rota attempts to derive personal jurisdiction over the defendants from her work with Howell Management Services in California. (*See* ECF 22, at 19–20 ("All liability is due to Plaintiff's work and conduct [in] California.").) But Vashisht-Rota's

decision to work in California does not demonstrate that either defendant purposefully availed themselves of California's benefits and laws—Judge Fonnesbeck and the Utah Attorney General merely worked on (or didn't work on) cases in Utah. Nor does Vashisht-Rota's California residency alter the analysis. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (holding that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *Pyle v. Hatley*, 239 F. Supp. 2d 970, 981 (C.D. Cal. 2002) ("Issuance of an order by a Nevada judge to a party who appeared before the judge is not sufficient to create personal jurisdiction in this [California federal] Court over the judge . . . ."). Thus, the Court lacks personal jurisdiction over both defendants.[3]

## D.   Leave to Amend

Vashisht-Rota requests leave to amend her complaint to add additional parties and allegations. (*See* ECF 31.) In particular, she wants to add the State of Utah and seven more judges—mostly current or former members of the Utah Court of Appeals who denied her appeals. (*See* ECF 31-1, at 1.) She also wishes to add more causes of action and somewhat more detail to her claims and damages calculations. (*See* ECF 31-1, *passim*.) But she does not seek to change the basic character of her complaint. That is, the proposed amended complaint would still focus on the defendants' purported violation of her "right to have a fair civil trial" during her two cases before Judge Fonnesbeck and the ensuing appeals. (*See* ECF 31-1, at 3.)

A request to amend that requires judicial consent, like this one, should be "freely" granted "as justice so requires." Fed. R. Civ. P. 15(a)(2). But the Court may deny a request

---

[3] Defendants raise additional concerns about Vashisht-Rota's complaint, arguing that: her injunctive-relief requests violate the Federal Courts Improvement Act; the Utah Attorney General is eligible for Eleventh Amendment and sovereign immunity; *Younger* abstention applies; and the complaint doesn't state a claim. But given that this Court lacks subject-matter and personal jurisdiction—and that judicial immunity applies to the primary defendant—we need not address these issues.

to amend based on "futility," among other things. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Futility of amendment is analyzed much like a Rule 12(b)(6) motion to dismiss— an amended complaint is futile when it would be subject to dismissal." *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 739 (S.D. Cal. 2020). "Plaintiffs' motion for leave to amend should be denied if the proposed amended complaint does not remedy the deficiencies that caused the Court to dismiss the original complaint." *Id.*

That is precisely the problem here. The additional facts in Vashisht-Rota's proposed amended complaint would not change the Court's analysis of the first two issues—judicial immunity and *Rooker-Feldman*—in the least. (*See generally* ECF 31-1 (proposed amended complaint).) So, the motion to amend with that new complaint is denied as futile.

But that ends neither the analysis nor this case. Courts should not dismiss complaints by unrepresented plaintiffs, like Vashisht-Rota, without offering them at least one opportunity to remedy identified defects, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Perhaps the defects here are incurable. After all, the defendants' motion to dismiss highlighted the shortcomings detailed above, yet Vashisht-Rota's later proposed amended complaint failed to fix them. (*See* ECF 11 (motion to dismiss); ECF 31-1 (proposed amended complaint).) But the matter is not "absolutely clear," so the Court will provide Vashisht-Rota an opportunity to attempt to cure the defects identified above.

## CONCLUSION

Defendants' motion to dismiss is **GRANTED**. Plaintiff's motion to amend the complaint with her currently proffered amended complaint is **DENIED**. By October 4, 2023, plaintiff Vashisht-Rota may file a new amended complaint addressing the deficiencies discussed in this order. Vashisht-Rota may not add new defendants nor new causes of action to any such amended complaint; she may only add facts that address the defects described above.

The Clerk is directed to close this case. The Clerk will postpone issuing a judgment until the deadline to amend passes without an amended complaint or until Vashisht-Rota

9

affirmatively notifies the Court that she will not amend. If Vashisht-Rota files an amended complaint by the deadline, the Clerk will reopen this case.

Dated:  September 6, 2023

_____
Andrew G. Schopler
United States District Judge

10