UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aparna VASHISHT-ROTA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>UTAH ATTORNEY GENERAL, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 22-cv-0978-AGS-KSC<br><br>**ORDER GRANTING MOTION TO DISMISS (ECF 77), DISMISSING COMPLAINT WITHOUT LEAVE TO AMEND, AND CLOSING CASE** |

Plaintiff sued a Utah state judge and the Utah Attorney General, alleging that they violated her rights in handling her Utah state cases. After defendants' successful motion to dismiss, plaintiff was given leave to amend to cure defects in her complaint. Yet the same deficiencies persist in her new complaint, so it too is dismissed.

## BACKGROUND

This case primarily involves plaintiff Dr. Aparna Vashisht-Rota's litigation of two cases against Howell Management Services in Utah state court. *See Vashisht-Rota v. Utah Att'y Gen.*, No. 22-CV-0978-AGS-KSC, 2023 WL 5767203, at *1 (S.D. Cal. Sept. 6, 2023); (*see also* ECF 76, at 1–2). After unfavorable rulings in both Utah cases, Vashisht-Rota sought relief in California federal court, suing two officials involved in her state proceedings: (1) Utah-based Judge Angela Fonnesbeck and (2) Utah's Attorney General. (ECF 76, at 1–2.) This Court dismissed that suit, but with leave to amend. *Vashisht-Rota*, 2023 WL 5767203, at *6. The amended complaint here followed. (ECF 76.)

In the new complaint, Vashisht-Rota's allegations against Judge Fonnesbeck are numerous. (*See generally* ECF 76.) They include:

- "humiliat[ing] [plaintiff] in front of her male counterparts,"
- "perpetrat[ing] white supremacy by being unprofessional,"
- "overd[oing] the picking of errors" in plaintiff's complaint,
- "mock[ing] [plaintiff] with slave comments,"

- "unjustly tortur[ing] [p]laintiff by sending her to mediate a dispute against a known pimp,"
- "act[ing] to deprive [p]laintiff of her personal liberty with the intent to violate California's pimping and pandering laws," and
- holding "[p]laintiff's money, career, well-being, life, liberty, and accomplishments hostage due to extreme gender, sex, and race violence."

(ECF 76, at 21, 22, 24, 31, 41.) Vashisht-Rota's only allegation against the Utah Attorney General is that he is "vicariously liable" for Judge Fonnesbeck's acts. (ECF 76, at 22, 59.)

Vashisht-Rota again "asserts that these actions violated constitutional, statutory, and common-law rights under United States, California, and Utah law." *See Vashisht-Rota*, 2023 WL 5767203, at *1; (*see also* ECF 76, *passim*). She claims $8 billion in actual damages and asks the Court to "order declaratory relief under 42 U.S.C. § 1983" that California choice-of-law provisions apply retroactively to her Utah matters and to "[o]rder [i]njunctive relief should Utah not comply." (ECF 76, at 42–43.)

## DISCUSSION

Defendants move to dismiss, arguing once again that "judicial immunity insulates Judge Fonnesbeck, the *Rooker-Feldman* doctrine bars all claims, and this Court lacks personal jurisdiction over both defendants." *See Vashisht-Rota*, 2023 WL 5767203, at *2; (ECF 77, at 2).

Although thoroughly rewritten, Vashisht-Rota's amended complaint is substantively identical to her original complaint. (*Compare* ECF 1 *with* ECF 76.) There are many changes, of course. She includes excerpts and filings from several high-profile cases, including—among others—the *Depp v. Heard* and *Carroll v. Trump* trials. (ECF 76, at 4–8, 127–243.) And her chosen equitable remedy has switched from injunctive to declaratory relief. (*Compare* ECF 1, at 1 *with* ECF 76, at 1.) But none of this alters the result. She ultimately continues to allege "malice, prejudice, and theft" in a manner that is barred for reasons previously explained. (*See* ECF 76, at 14); *see generally Vashisht-Rota*, 2023 WL 5767203.

### A. Judicial Immunity

The doctrine of judicial immunity has long been a cornerstone of American jurisprudence. *See, e.g.*, *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872) ("[A] judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."). The doctrine dictates that "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."[1] *Stump v. Sparkman*, 435 U.S. 349, 360 (1978); *see Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 915–16 (9th Cir. 2021) (explaining doctrine and noting that even "a conspiracy between judge and [a party] to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges" (quotation marks omitted)). Judges are shielded by judicial immunity in all but two circumstances: (1) when a judge's actions are "nonjudicial," meaning the actions are "not taken in the judge's judicial capacity," and (2) when a judge's actions, "though judicial in nature, [are] taken in the complete absence of all jurisdiction." *Acres Bonusing*, 17 F.4th at 915–16. Courts "broadly construe the scope of immunity," and "exceptions to immunity should be narrow and technical distinctions should be avoided." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986).

Vashisht-Rota no longer claims Judge Fonnesbeck's actions were nonjudicial. (*See generally* ECF 76; ECF 78.) She instead maintains that she was only "harmed [as] a result of the action Utah Courts took without jurisdiction." (ECF 76, at 26.)

"To determine if the judge acted with jurisdiction, courts focus on whether the judge was acting clearly beyond the scope of subject matter jurisdiction . . . . Where not clearly lacking subject matter jurisdiction, a judge is entitled to immunity . . . ." *Ashelman*, 793

---

[1] To be clear, this Court offers no opinion on whether Judge Fonnesbeck made any errors in the underlying suits. That issue is not presented, nor has the Court considered any evidence on the point.

F.2d at 1076. So, for example, "if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action." *Sparkman*, 435 U.S. at 357 n.7. But if "a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." *Id*. Regardless, "the [Utah] state district courts are courts of general jurisdiction." *Vashisht-Rota*, 2023 WL 5767203, at *3. That "broad jurisdictional grant" certainly included the run-of-the-mill civil cases assigned to Judge Fonnesbeck, which are the target of Vashisht-Rota's lawsuit. *See Sparkman*, 435 U.S. at 357. Judge Fonnesbeck therefore had jurisdiction over Vashisht-Rota's cases.

Vashisht-Rota disagrees. In fact, she even informed the Utah court it was "not entitled to [judicial] immunity," because it was "repeatedly told [it did] not have jurisdiction," as Vashisht-Rota "wishe[d] to revert to the California agreements or void Utah [law]." (ECF 78, at 12.) Her jurisdictional argument centers on the California Labor Code, which she believes strips the Utah court's power to hear her case. Specifically, under that Code, an employer may not oblige "an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would" either: (1) "[r]equire the employee to adjudicate outside of California a claim arising in California" or (2) "[d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California." *See* Cal. Labor Code § 925(a); (*see also* ECF 76, at 32 ("As per §925B [sic], [p]laintiff can void an out of state forum . . . .")). Critically, this Code section applies to "a contract entered into, modified, or extended on or after January 1, 2017." Cal. Labor Code § 925(f). Vashisht-Rota believes that her contract falls within this legal framework because she was an "employee" under the Labor Code and her contract was "modified" after the statute's 2017 effective date, thanks to a 2019 agreement with opposing counsel. (ECF 78, at 11.) Thus, she reasons, "by July 23, 2019," her suit was no longer governed by Utah law, but by "California [Labor Code section] 925." (ECF 76, at 8, 9.)

4

But her unilateral decision to purportedly "void" the Utah choice-of-law provision in her employment contract, whatever the effect of that choice may be, does not affect the Utah court's jurisdiction. After all, "even if the underlying cases should have applied California law, as Vashisht-Rota asserts, state courts routinely consider conflict-of-laws questions and have jurisdiction to apply out-of-state law." *Vashisht-Rota*, 2023 WL 5767203, at *3. So "the possible implication of California law does not affect Judge Fonnesbeck's jurisdiction to hear the dispute." *Id*.

Thus, judicial immunity bars all claims against Judge Fonnesbeck.

## B.   The *Rooker-Feldman* Doctrine

Federal district courts do not have jurisdiction over suits "brought by state-court losers complaining of injuries caused by state-court judgments." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005)). "The jurisdictional prohibition arises from a negative inference drawn from 28 U.S.C. § 1257 which grants jurisdiction to review state court decisions in the United States Supreme Court," and which in turn "impliedly prohibits lower federal courts from reviewing state court decisions." *Id. Rooker-Feldman* "is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).

"[F]or *Rooker-Feldman* to apply, a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). Put simply, a U.S. district court cannot review a state-court decision when the harm suffered by the plaintiff is "inextricably intertwined" with the state court's decision. *Bianchi*, 334 F.3d at 900–01. Claims are "inextricably intertwined" if "the district court must hold that the state court was wrong in order to find in favor of the plaintiff." *Doe & Assocs. L. Offs. v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001). Therefore, if plaintiff seeks to have the

state-court decision "undone" by the district court, *Rooker-Feldman* bars that federal action. *Bianchi*, 334 F.3d at 900.

Although Vashisht-Rota has supplemented her complaint with numerous additional allegations, it still functions as a forbidden de facto appeal. As in her original complaint, Vashisht-Rota's claims rest on "legal wrongs . . . made during the Utah cases and of failures to correct those internally," and she "seeks damages arising from these state-court proceedings, as well as the reopening and transfer of those cases to California." *See Vashisht-Rota*, 2023 WL 5767203, at *3; (*see also* ECF 76, at 43 (requesting that the Court "[o]rder declaratory [or injunctive] relief under 42 U.S.C. § 1983 that California § 925[] governs the dispute as of July 23, 2019" and seeking billions of dollars in damages)). Vashisht-Rota thus still seeks to undo the state-court judgment, which runs afoul of *Rooker-Feldman*. *See Bianchi*, 334 F.3d at 900.

Vashisht-Rota once again contends that the *Rooker-Feldman* doctrine does not apply because her Utah cases are pending with the U.S. Supreme Court. (ECF 78, at 10.) But both of Vashisht-Rota's cases were denied certiorari. *Vashisht-Rota v. Howell Mgmt. Servs., LLC*, 144 S. Ct. 562 (2024), *reh'g denied*, No. 23-448, 2024 WL 759945 (U.S. Feb. 26, 2024); *Vashisht-Rota v. Howell Mgmt. Servs., LLC*, 144 S. Ct. 499 (2023) (denying certiorari).

Thus, the *Rooker-Feldman* doctrine deprives this Court of subject-matter jurisdiction over this dispute.

## C. Personal Jurisdiction

Previously, the Court concluded: "Vashisht-Rota has not carried her 'burden of demonstrating that [personal] jurisdiction is appropriate'" over either defendant. *Vashisht-Rota*, 2023 WL 5767203, at *4 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). In her amended complaint, Vashisht-Rota admits this Court lacks personal jurisdiction over the Utah Attorney General. (*See* ECF 76, at 59 ("Plaintiff will concede [the Utah Attorney General] should not be there but needs someone to sue for [sic] State of Utah for the theft.").) And, since Vashisht-Rota failed to include

any new personal-jurisdiction factual allegations concerning Judge Fonnesbeck in her amended complaint, defendants argue the Court's original personal-jurisdiction finding must apply to it as well. (*See* ECF 77, at 21–22.) They have a point.

Rather than allege anything new concerning Judge Fonnesbeck, Vashisht-Rota continues to attempt to derive personal jurisdiction from her own work with Howell Management Services in California. (*See* ECF 76, at 8, 28 ("100% of the work and events took place in California.").) She further proposes that if she can "add" Judge Fonnesbeck to a complaint in Utah, Judge Fonnesbeck will become "related to the California dispute." (ECF 78, at 9.) Neither argument has merit.

A court can exercise general personal jurisdiction over a defendant if that defendant is domiciled in the state in which the court sits. *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 262 (2017). If not, "there must be an 'affiliation between the forum and the underlying controversy . . . that takes place in the forum state.'" *Id*. at 264 (citations omitted). Because Judge Fonnesbeck is not domiciled in California, (ECF 76, at 9), and thus the Court does not have general personal jurisdiction over her, Vashisht-Rota must sufficiently allege specific personal jurisdiction. "For a court to exercise [specific] personal jurisdiction over a nonresident defendant," the defendant must have at least "'minimum contacts' with the relevant forum" and the "claim must be one which arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 801–02 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There is still no evidence that any claim here arose from or related to activities directed towards California. These claims stem from two suits filed in Utah, assigned to Utah-based Judge Fonnesbeck, and ruled upon in Utah. None of that suggests the judge purposefully availed herself of California's forums, residents, or laws. Nonetheless, Vashisht-Rota once again "attempts to derive personal jurisdiction over the defendants from her work with Howell Management Services in California" and from her California residency. *See Vashisht-Rota*, 2023 WL 5767203, at *5; (ECF 76, at 8, 28). As the Court

already explained, "Vashisht-Rota's decision to work in California does not demonstrate that either defendant purposefully availed themselves of California's benefits and laws." *Vashisht-Rota*, 2023 WL 5767203, at *5. Furthermore, "Vashisht-Rota's California residency [does not] alter the analysis." *Id.* Ultimately, "plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 287 (2014).

Thus, the Court lacks personal jurisdiction over both defendants.

**D.    Leave to Amend**

Generally, leave to amend should be freely granted "when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see* Fed. R. Civ. P. 15(a)(2). Yet Vashisht-Rota was already given leave to cure the deficiencies in her complaint with respect to judicial immunity, the *Rooker-Feldman* doctrine, and personal jurisdiction over the defendants. *See generally Vashisht-Rota*, 2023 WL 5767203. The amended complaint fails to adequately address any of the issues identified by the Court in its previous order, and it is now clear that her claims cannot "be saved by any amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Because the Court finds that further amendment would be futile, leave to amend is denied.

## CONCLUSION

Defendants' motion to dismiss is **GRANTED** without leave to amend. The Clerk is directed to issue a judgment in defendants' favor and close this case.

Dated:  August 23, 2024

Andrew G. Schopler
United States District Judge