UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aparna VASHISHT-ROTA, <br><br> Plaintiff, <br><br> v. <br><br> UTAH ATTORNEY GENERAL, et al., <br><br> Defendants. | Case No.: 22-cv-0978-AGS-KSC <br><br> **ORDER IMPOSING SANCTIONS** |
| Aparna VASHISHT-ROTA, <br><br> Plaintiff, <br><br> v. <br><br> HARRISBURG UNIVERSITY <br><br> Defendant. | Case No.: 20-cv-0967-AGS-KSC <br><br> **ORDER IMPOSING SANCTIONS, MOOTING SUMMARY JUDGMENT MOTION (ECF 142), AND DISMISSING CASE** |
| Aparna VASHISHT-ROTA, <br><br> Plaintiff, <br><br> v. <br><br> OTTAWA UNIVERSITY, <br><br> Defendant. | Case No.: 20-cv-0959-AGS-KSC <br><br> **ORDER IMPOSING SANCTIONS** |
| Aparna VASHISHT-ROTA, <br><br> Plaintiff, <br><br> v. <br><br> HOWELL MANAGEMENT SERVICES, et al. <br><br> Defendants. | Case No.: 20-cv-0321-AGS-KSC <br><br> **ORDER IMPOSING SANCTIONS** |

In four of plaintiff Dr. Aparna Vashisht-Rota's cases, this Court ordered her to show cause why she should not be sanctioned for "apparently flagrant violations of this Court's

order." (ECF 140.)[1] Having now reviewed her responses and witnessed her continued and unabated disobedience, it's clear that the violations were willful, intentional, and done in bad faith. Despite her *pro se* status, the Court's patience with Vashisht-Rota must at last draw to a close, and a sanction must be levied. In the end, the only sanction the Court can conceive that will address the ongoing and rampant violations is the dismissal of Vashisht-Rota's one remaining case.

## BACKGROUND

This Court's local rules require litigants to "refrain from writing letters to the judge" and mandate that "[a]ll matters to be called to a judge's attention should be formally submitted." CivLR 83.9. To put it mildly, Vashisht-Rota has routinely ignored this restriction. After one particularly bad week in February 2024, wherein she sent "over 40 emails" on topics ranging "from criticizing other judges, to legal arguments and theories, to damages calculations, to the British royals, and even to pop star Taylor Swift's age," the Court ordered her "to cease cc'ing the Court on communications with opposing counsel and to cease emailing the Court anything other than a request for procedural help in filing an upcoming motion." (ECF 87.) This admonishment was needed because the Court was wasting "hours a week skimming her emails for appropriate requests." (*Id.*) Less than two weeks later, the assigned magistrate judge again rebuked Vashisht-Rota for her misuse of the court's email, warning that Vashisht-Rota "must not send any other emails" to that chambers "except as permitted under Magistrate Judge Crawford's Civil Chambers Rules." (ECF 91.)

Yet Vashisht-Rota soon returned to her abuse of the Court's resources. So, in May 2024, this Court further restricted her communications in both quantity and substance:

> Plaintiff is henceforth limited to contacting this Court no more than once per day, unless otherwise ordered. The term "contacting" includes emailing, writing, phone-calling, leaving a voicemail, and all other forms of

---

[1] To avoid duplication, the Court will default to citing the *Harrisburg* action, as it is the sole remaining open case.

communication. In addition, although plaintiff has several cases she may want to contact the Court about, she is limited to one contact with chambers per day to discuss any and all cases. Finally, any such contact or communication **must strictly confine itself to requesting a hearing date for an authorized motion.** For all other procedural questions, plaintiff is directed to contact the Clerk's office, not chambers.

(ECF 100.)

Vashisht-Rota was undeterred. In the very next filing in the *Harrisburg* case, the magistrate judge again "received multiple emails from plaintiff in violation of the Court's Local Rules and Chambers Rules" and admonished Vashisht-Rota to comply with Local Civil Rule 83.9. (ECF 101.) Again in September, the magistrate judge noted Vashisht-Rota "continue[d] to email the Court's efile inbox, sometimes on an ex parte basis, seeking legal advice or for other purposes not permitted under the Civil Local Rules or the Court's Chambers Rules." (ECF 129.) The magistrate judge "once again admonished" Vashisht-Rota "to cease contacting the Court for any purpose not expressly allowed under the Civil Local Rules or the Court's Chambers Rules." (*Id.*)

Matters got worse. In October 2024, she sent this Court about 135 emails. The topics again ran the gamut—including marriage proposals, whales in California, alleged extramarital affairs, and property mold—but none of them were appropriate. An excessively heavy barrage of such emails at the end of October and early November resulted in this order to show cause:

> In each of her related cases, plaintiff has been "limited to contacting this Court no more than once per day, unless otherwise ordered," due to the sheer number of irrelevant or improper messages she sent to the Court's email. (*See* ECF 100.) This limitation was specifically defined as "one contact with chambers per day to discuss any and all cases," as she has several cases pending before this Court. (*Id.*) "Finally, any such contact or communication **must strictly confine itself to requesting a hearing date for an authorized motion**." (*Id.*) Despite that order -- and despite pointed reminders about it in her related cases -- plaintiff has emailed this Court 75 times in the last 15 days, including over 20 times in a single day. As before, the topics have varied wildly, ranging from her disagreement with court orders all the way to discussing her uncle. Although the Court has shown plaintiff latitude given

her pro se status, her apparently flagrant violations of this Court's order must end.

(ECF 140.) So, the Court ordered a "**single, consolidated response of no more than 15 pages**" for her to explain why she should not be sanctioned. (*Id.*) Yet Vashisht-Rota elected to file multiple responses across her various cases. (*See* ECF 141 & 148; ECF 87 in 20-cv-0959-AGS-KSC; ECF 363 & 364 in 20-cv-0321-AGS-KSC.)

Even after the stark warning of that show-cause order, just a few days later, Vashisht-Rota violated again by emailing the Court "five times" in a single day. (*See* ECF 365 in 20-cv-0321-AGS-KSC.) In response, the Court "admonished her to strictly adhere to the Court's orders going forward." (*Id.*) Instead, between that last admonishment and two weeks after being placed under a show-cause order for the same misbehavior, Vashisht-Rota emailed this Court 30 additional times, including 10 in a single day. Not one was a permissible request for a motion hearing date.

## DISCUSSION

Under Rule 41, this Court may issue sanctions, up to and including "involuntary dismissal," for failure "to comply with" "a court order." *See* Fed. R. Civ. P. 41(b). In addition, this Court has the inherent authority to order the "outright dismissal of a lawsuit" for court-order violations. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

**A.   Rule 41 Dismissal**

In evaluating whether to dismiss a plaintiff's case under Rule 41(b) for disobeying a judicial order, the Court must weigh: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

**1.   *Public Interest in Expeditious Resolution***

The first factor, concerning "expeditious resolution of litigation," always weighs in favor of dismissal. *See Pagtalunan*, 291 F.3d at 642.

### 2. *Docket Management*

"[I]t is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants." *Pagtalunan*, 291 F.3d at 642. Here, Vashisht-Rota violated the local rule and this Court's orders concerning her emails well over 100 times. Despite repeated reminders, admonishments, and warnings, Vashisht-Rota persisted in defying the Court's orders and rules. As this Court must "preserve" its resources and "power to manage [its] docket" without "endless vexatious noncompliance," this factor strongly favors dismissal. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), as amended (May 22, 1992).

### 3. *Prejudice*

The prejudice to the other parties in these matters is also manifest. In some emails, Vashisht-Rota engaged in prohibited ex parte contact with the Court, depriving her litigation opponents of even knowing what she said. More often, though, she barraged these largely meaningless emails at both the Court and opposing counsel. Given the countless hours this Court spent reading those emails, the private clients funding the various defense counsel certainly spent thousands, if not tens of thousands, of dollars to review those communications. When a plaintiff's improper conduct costs the opponents "time and money," this sort of prejudice may favor dismissal. *See West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1524 (9th Cir. 1990).

"Whether prejudice is sufficient to support an order of dismissal is in part judged with reference to the strength of the plaintiff's excuse" for her behavior. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). Vashisht-Rota's excuses for this ongoing disobedience are paltry, at best. Across her several responses, she argued that a different judge's chambers rules are "the best for filing as it eliminates contact with the Court for scheduling." (*See* ECF 363, at 1, in 20-cv-0321-AGS-KSC.) The problem, though, wasn't her contact with the court for scheduling, but the hundreds of inappropriate contacts that had nothing to do with calendaring issues. Regardless, she never explained how that chambers-rules preference provides some authority to ignore court orders. Likewise, in

another response, she added a request for a three-judge panel to hear her case. (*See* ECF 87, at 1, in 20-cv-0959-AGS-KSC.) Setting aside the appropriateness of the request or how it was made, it also fails entirely to justify her inappropriate behavior.

Finally, across several of her responses, she intimates that various defendants didn't pay her or otherwise committed torts against her. (*See, e.g.*, ECF 141, at 1 ("HMS would not accept the value received, or pay the contract(s) or settle even when Rota was fully compliant seeking harm against her that she can't write off. HMS destroyed her career in a trial she had no chance of adding her claims/defenses.").) She seems to be arguing that because those individuals allegedly owe her money, she cannot be held to account for her misdeeds in court. One of her five inappropriate emails on November 11 made this point more clearly: "I think I cannot be held in contempt because I am owed too much money." But the Court was unable to find any case that supported the proposition that because a litigant's claims are valuable (or she believes them to be), she may disregard court rules and orders at her whim.

The third factor, regarding prejudice to other parties, also strongly favors dismissal.

### 4. *Lesser Sanctions*

The Court has considered—and attempted—lesser sanctions, and this factor favors dismissal as well. Vashisht-Rota is already subject to a multi-million-dollar judgment that arose from a previous judicial sanction, meaning that simply heaping more monetary penalties on her would have little effect. (*See* ECF 319-2, at 58, 90–91 (Utah State Court order relying on a "sanctions order" striking Vashisht-Rota's defenses to impose nearly $8,000,000 in damages).) And she's been previously "subjected to several monetary sanctions" and "vexatious litigant" determinations that apparently did not deter her misconduct in this case. (*See id.* at 51.) Further, this Court's many admonishments and orders have been utterly unsuccessful in restraining Vashisht-Rota's repeated misbehavior. Given this Court's long history with Vashisht-Rota, it appears the only way to prevent her defiance of Court orders is to dismiss her remaining case and close the record. The Court notes that the Ninth Circuit has likewise restricted her ability to file by closing a case and

refusing to accept future filings. *See Vashisht-Rota v. Howell Mgmt. Servs.*, No. 24-994, 2024 WL 2559491, at *1 (9th Cir. Apr. 23, 2024) (summarily affirming this Court because Vashisht-Rota's issues were "so insubstantial as not to require further argument" and ordering that "[n]o further filings will be entertained in this closed appeal").

### 5. *Merits-Disposition Policy*

"Public policy favors disposition of cases on the merits," so this fifth factor always "weighs against dismissal." *See Pagtalunan*, 291 F.3d at 643.

Because "at least four factors support dismissal"—and two strongly favor dismissal—the Court concludes that dismissal is the proper remedy under Rule 41(b). *See Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). In addition to these enumerated factors, the willfulness of plaintiff's conduct favors dismissal, as discussed below.

### B. Dismissal Based on Inherent Authority

Regardless of any Rule 41 sanctions, Vashisht-Rota's violations demand dismissal of her case based solely on the Court's inherent authority. This is particularly true given the willful and repeated nature of her misconduct. "[W]illful disobedience of a court's order" by itself can justify dismissal under a court's inherent authority. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). The sheer number of admonishments, reminders, and warnings given to Vashisht-Rota leave no doubt that she willfully chose to ignore the Court's order more than 100 times. And Vashisht-Rota has a long history of violating court orders in these cases. *See, e.g.*, *Vashisht-Rota v. Howell Mgmt. Servs.*, No. 20-CV-0321-AGS-KSC, 2024 WL 710885, at *1 (S.D. Cal. Feb. 21, 2024) (describing her long history of filings in a closed case despite being "repeatedly cautioned" that "no additional filings would be accepted in [that] matter"), *aff'd*, No. 24-994, 2024 WL 2559491 (9th Cir. Apr. 23, 2024); *Vashisht-Rota v. Howell Mgmt. Servs.*, No. 20-CV-0321-AGS-KSC, 2024 WL 2218961, at *1 (S.D. Cal. May 15, 2024) (noting that Vashisht-Rota had filed "no fewer than ten [extra] filings (consisting of nearly 3,000 pages, with exhibits) to oppose that motion" after being told "no further filings" would "be entertained in [that] closed

case"). After so many willful violations of court orders, in the face of repeated warnings and admonishments, the Court can no longer permit this case to continue. The Court is sympathetic to the challenges faced by self-represented litigants. But Vashisht-Rota's "pro se status does not excuse repeated and continued noncompliance" with "court orders." *See Wilson v. Boldt*, No. EDCV 11-1359-PSG (JPR), 2018 WL 11354850, at *4 (C.D. Cal. Oct. 26, 2018), *report and recommendation adopted sub nom. Wilson v. D.M. Boldt*, No. EDCV 11-1359-PSG (JPR), 2019 WL 13098508 (C.D. Cal. Jan. 2, 2019).

## CONCLUSION

Under Rule 41(b) and the Court's inherent authority, the minimum appropriate sanction to address Vashisht-Rota's willful misbehavior is dismissal of her last remaining case. The Clerk is directed to close the *Harrisburg* matter. The pending summary-judgment motion in that case is denied as moot. The only remaining issue for the Court to rule on is the fully briefed question of the vexatious-litigant motion in the *Howell Management Services* case. As a result, "[n]o further filings will be entertained" or allowed in any of these four cases, except a notice of appeal. *See Vashisht-Rota v. Howell Mgmt. Servs.*, No. 24-994, 2024 WL 2559491, at *1 (9th Cir. Apr. 23, 2024).

Dated: November 27, 2024

Hon. Andrew G. Schopler
United States District Judge